COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, McCullough and Senior Judge Bumgardner

JOANN HOYLE

                                                                    MEMORANDUM OPINION[*]
v.      Record No. 1274-13-1                                        PER CURIAM
                                                                    DECEMBER 10, 2013
CHESAPEAKE DEPARTMENT OF HUMAN SERVICES

                FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                               Randall D. Smith, Judge

           (John A. Coggeshall, on brief), for appellant.  Appellant submitting
           on brief.

           (Ryan C. Samuel, Assistant City Attorney; James E. Short, Guardian
           *ad litem* for the minor children, on brief), for appellee.  Appellee
           and Guardian *ad litem* submitting on brief.


       Joann Hoyle (mother) appeals the order terminating her parental rights to her children.

Mother argues that the trial court erred in terminating her parental rights to her children pursuant to

Code § 16.1-283(C)(2) because mother "successfully rehabilitated her life after the 12-month period

from the date the children were placed in foster care" and it was in the children's best interests to be

returned to her care.  Upon reviewing the record and briefs of the parties, we conclude that the trial

court did not err.  Accordingly, we affirm the decision of the trial court.

                                        BACKGROUND

       We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cnty. Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In August 2009, mother lived with her two children, who were two and three years old at the time, and their father, Brooks Smith. On August 16, 2009, the police were called to the house to investigate a domestic dispute. The police contacted the child protective services unit of the Chesapeake Department of Human Services (the Department) because the children had multiple bruises on their faces and bodies. The older child had a bruise in the form of a handprint on her face and said that her mother hit her across the face with her hand. The younger child had a black eye. Mother was arrested for felony child abuse.[1]

The Department referred mother to an anger management program and a parent education program. It also developed a safety plan with the parents, so that mother was not allowed to have unsupervised contact with the children. In a follow-up visit, the Department learned that the safety plan was not being followed. As a result, the Department filed abuse and neglect petitions and sought protective orders, which required mother to leave the home.

On August 31, 2009, the Department and the police went to the house to serve the protective orders on mother. Mother was home alone with the children. She became belligerent and ripped up the protective orders. Based on the actions of mother and other family members, the Department removed the children and placed them in foster care. The Chesapeake Juvenile and Domestic Relations District Court (the JDR court) found that both children were abused or neglected.

The Department placed the children with father on September 27, 2009. From January 6, 2010 until February 12, 2010, mother and father, without permission of the Department, moved the children to an undisclosed location. The Department subsequently placed the children back in foster care.

In March 2010, mother was arrested on numerous charges concerning a shooting incident. She pled guilty to a felony charge of malicious shooting at an occupied dwelling and was sentenced

---

[1] The charge was subsequently *nolle prosequied*.

to three years in prison, with all but six months suspended. In addition, she was convicted of two misdemeanor charges of brandishing a firearm and received a six-month suspended sentence on each charge. She also was convicted of willfully discharging a firearm in public and received a six-month suspended sentence.

In May 2010, the Department placed the children with their paternal uncle, Brandon Vann. They have been in his care since that time.

In late 2010 and early 2011, mother met with Dr. Cathy A. Tirrell for a psychological and parenting evaluation. Dr. Tirrell concluded that "it would not be in the best interests of [the children] if they were placed back into Ms. Hoyle's custody" because of mother's "risk factors for dysfunctional parenting behaviors and perpetuating an unstable, unpredictable, and volatile home environment."

Despite the services offered by the Department, mother was unable to meet all of their requirements and remedy her situation. In September 2011 and August 2012, mother failed random drug screens. The Department had to change her visitations so that they were supervised at the courthouse because mother threatened the social workers and Vann. In addition, mother made inappropriate comments to the children during visitations and favored one child over another. Mother did not provide evidence to the Department of stable employment and appropriate housing. However, at the hearing on June 20, 2013, mother had copies of her current lease and paystubs. She admitted that she had not provided them to the Department before the trial; thus, the Department was unable to verify her housing and employment situation.

After hearing all of the evidence and argument, the trial court held that it was in the children's best interests for mother's rights to be terminated pursuant to Code § 16.1-283(C)(2).[2] This appeal followed.

---

[2] Father agreed to the termination of his parental rights in the JDR court.

ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Mother argues that the trial court erred in terminating her parental rights because she had improved her situation since the children were placed in foster care. She contends she reformed and rehabilitated her life since she moved away from Chesapeake in early 2013. She testified that she currently lived in a two-bedroom apartment with her father in Buena Vista and worked at a fast-food restaurant, earning minimum wage. Her sister was helping her with transportation.

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Mother argues that the trial court should have considered the efforts she had made since January 2013 to improve her situation. She relies on L.G. v. Amherst Cnty. Dep't of Soc. Servs., 41 Va. App. 51, 581 S.E.2d 886 (2003), to support her argument that the trial court can look beyond the twelve months after the children were placed in foster care to see if a parent has remedied the situation which led to the children being placed in foster care.

In L.G., the Court stated, "The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." Id. at 56, 581 S.E.2d at 889. "The time limit does not, however, temporally restrict the trial court's consideration to events that occurred between the parent and child only during that discrete twelve-month time period to the exclusion of what may have occurred before and after those dates." Id. at 57, 581 S.E.2d at 889.

In L.G., the Court reversed the trial court's decision to terminate L.G.'s parental rights because "the trial court did not consider significant relevant evidence concerning whether, at the time of the hearing, L.G. had made substantial progress in correcting the conditions that led to the foster care placement and whether termination of L.G.'s parental rights was in K.'s present best interests." Id. at 59, 581 S.E.2d at 890.

Unlike L.G., the trial court considered mother's present situation. It accepted into evidence a copy of her current lease and heard evidence about her current employment situation. It also heard evidence that she did not provide this information to the Department before the trial, so that it could verify the information.[3] Mother also did not arrange for her family to be present at trial to corroborate her testimony and discuss her situation. The trial court had to weigh this information against mother's previous history of abuse and instability.

In issuing its ruling, the trial court noted that the children had been in foster care for approximately four years and, during that time, mother had been unwilling or unable to substantially remedy the situation that led to the children being placed in foster care. The trial court discussed the parenting evaluation in which Dr. Tirrell did not recommend placing the children back with mother.

---

[3] Mother called the social worker in May 2013 to inform the worker that she had moved and had a job. Mother did not provide any documentation to support those claims until the hearing on June 20, 2013.

It also commented on mother's inappropriate comments and actions during visitations with the children. Furthermore, it noted mother's criminal activity and drug use while the children were in foster care.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The trial court heard evidence that the children were doing well in their uncle's care and needed a permanent, safe home. Mother was unable to provide a safe, suitable home for the children, despite her recent attempts at finding housing and employment.

Considering the evidence in the record, the trial court did not err in terminating mother's parental rights to her children.

### CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

Affirmed.